E-FILED | 8/6/2025 4:31 PM
CC-31-2025-C-313
Monongalia County Circuit Clerk
Donna J. Hidock

EXHIBIT
1

## IN THE CIRCUIT COURT OF MONONGALIA COUNTY, WEST VIRGINIA

**JOSEPH DONHAM,**

    **Plaintiff,**

**v.**                                    **CIVIL ACTION NO._____**

**NATIONWIDE MUTUAL FIRE INSURANCE COMPANY,**

    **Defendant.**

### COMPLAINT

For his action against the Defendant, the Plaintiff Joseph Donham states as follows:

### THE PARTIES

1. Plaintiff Joseph Donham is a resident of Monongalia County, West Virginia.

2. Defendant Nationwide Mutual Fire Insurance Company (hereinafter referred to as "Nationwide") is a foreign insurance company authorized to conduct business in West Virginia, and does conduct such business in West Virginia, including in Monongalia County.

### JURISTICTION AND VENUE

3. Venue and jurisdiction are proper before this Court under West Virginia law because the insured property is located in Monongalia County and the claim arose in this county.

### FACTUAL BACKGROUND

4. At all relevant times, Plaintiff was the owner of a residence located in Monongalia County, West Virginia which was insured under Nationwide Homeowners Policy No. 9247HR023078. The policy was in full force and effect on August 7, 2023, the date of loss.

1

5.      On or about August 7, 2023, Plaintiff's roof sustained direct physical loss as a result of a hailstorm, a covered peril under the policy.

6.      Plaintiff timely reported the claim to Nationwide. On or about December 6, 2023, Nationwide denied coverage, asserting that the observed damage was due solely to "wear and tear" and granule loss, which it claimed were excluded causes of loss under the policy. In response, Plaintiff submitted a detailed report and estimate from a reputable roofing contractor, attributing the damage directly to hail and confirming that full roof replacement was necessary.

7.      On March 12, 2024, the Plaintiff retained counsel who sent a letter of representation to Nationwide's adjuster requesting any documentation that Nationwide relied on to deny the claim as well as a request to reconsider the denial.

8.      After receiving no response to the letter of representation for more than five months, on August 26, 2024, the Plaintiff, through counsel, filed a Complaint with the West Virginia Office of the Insurance Commissioner (hereinafter "WVOIC") based on the failure of Nationwide to provide the requested documentation or respond to the letter of representation.

9.      On September 9, 2024, in its response to the WVOIC, Nationwide falsely represented that it had previously paid Plaintiff over $16,000 for roof replacement under a 2022 wind damage claim, when in fact, nearly half of that payment was for fencing and other non-roof items since Nationwide had only paid for a small portion of the Plaintiff's roof to be replaced. Additionally, Nationwide responded that it could not locate Plaintiff's counsel's letter of representation.

10.     On or about September 10, 2024, Nationwide's adjuster finally responded to the letter of representation, and Plaintiff's counsel submitted the requested photos and documentation in support of the $22,351.54 claim for a full roof replacement.

11.     On September 23, 2024, Nationwide rescinded its full denial of the claim but issued only a partial payment of approximately $5,102.58 after it unilaterally credited itself $5,050.40 from the prior, unrelated 2022 wind claim (Claim No. 565844-GN).

12.     The 2022 wind claim involved multiple structures, including fencing and siding, and only a portion of the payment related to the roof. Nationwide's credit was improper and contrary to the policy.

13.     On June 23, 2025, counsel for the Plaintiff sent a final demand to Nationwide to pay the full amount of the roof replacement, and notified Nationwide that it had improperly subtracted $5,050.40 from the current 2023 hail damage claim as a credit to itself for the 2022 wind claim.

14.     On June 25, 2025, Nationwide sent correspondence to Plaintiff's counsel stating that its investigation into the claim had been completed, and that no further revisions would be made to the payment.

15.     On July 3, 2025, Nationwide sent additional correspondence stating that it would review the demand letter and anticipated having an update within the next week.

16.     On or about July 14, 2025, Nationwide issued another partial payment to the Plaintiff. Nationwide's adjuster called Plaintiff's counsel and said that Nationwide agreed that it should not have reduced Plaintiff's payment by crediting itself for the 2022 claim.

17.     During the conversation, Nationwide's adjuster, more than 18 months after the claim was reported, demanded, for the first time, that the Plaintiff provide a shingle integrity test to substantiate hail damage or the need for replacement. This requirement was not referenced in the policy and had never previously been raised, despite the length of time since the claim had been filed and Nationwide's prior denial and partial payment.

3

18.    On July 10, 2025, Nationwide's adjuster sent an email to Plaintiff's counsel stating that the matter was still under review, and that she would follow up with an update no later than July 16, 2025.

19.    On July 21, 2025, Nationwide's adjuster called Plaintiff's counsel with an increased offer, inclusive of previous partial payments, totaling $14,917.22, indicating the value Nationwide assigned to the 2023 claim.  However, the adjuster further instructed Plaintiff's counsel that Nationwide would not issue this payment unless the Plaintiff signed a release so that he could not "sue" Nationwide.  Plaintiff's counsel instructed the adjuster that requiring its insured to sign a release before it would agree to pay for the roof was improper. Nationwide's adjuster said that her manager required that the Plaintiff sign a release before issuing payment.

20.    On August 1, 2025, Nationwide's adjuster sent another email to Plaintiff's counsel which stated that his estimate had been approved, and that an actual cash value payment had been issued or was being processed.  The email later clarified that it was not actually the estimate provided by the Plaintiff that had been approved, but rather, it was Nationwide's latest assessment of the damages. However Nationwide's assessment was $5,506.07 lower than the estimate provided by the Plaintiff.

21.    In summary, Nationwide initially denied the Plaintiff's hail damage claim on December 6, 2023. It partially reversed that denial on September 23, 2024, but only after the Plaintiff filed a Complaint with the WVOIC, and even then, Nationwide improperly credited itself for a prior, unrelated claim payment.  On July 3, 2025, Nationwide conceded that the credit was improper and agreed to remove it. On July 21, 2025, Nationwide increased its valuation of the Plaintiff's claim but conditioned any payment on the Plaintiff signing a release, a coercive and improper demand.

Most recently, although Nationwide represented that it would pay the full value of the Plaintiff's roofing estimate, the actual amount it intends to pay is over $5,000 less than the estimate provided.

22.    Nationwide's pattern of denial, delay, misrepresentation, and coercion reflects a willful disregard for its contractual and legal duties, causing Plaintiff significant economic and emotional harm.

## COUNT I – BREACH OF CONTRACT

23.    Plaintiff repeats and re-alleges the above paragraphs as if fully set forth herein.

24.    Nationwide issued a policy or contract of insurance to the Plaintiff for coverage to his home and property.

25.    In exchange for this West Virginia policy and insurance coverage, the Plaintiff made payments of the insurance premium. The insurance contract was formed pursuant to West Virginia law and was in effect on August 7, 2023.

26.    As part of its contractual duties owed to its first party insured, Mr. Donham, Nationwide was obligated to pay Mr. Donham for the coverage he purchased, in this instance, homeowner's insurance coverage for his damaged roof.

27.    Nationwide was further obligated to perform its contractual duties in good faith, consistent with West Virginia law. These duties included conducting a prompt and thorough investigation, objectively evaluating the claim, communicating with its insured and his counsel, responding in a timely and reasonable manner, and making payments in accordance with the policy's terms.

28.    Nationwide breached the insurance contract and these obligations by:

(a)    Denying a covered hail loss without reasonable basis;

(b)    Failing to diligently investigate the facts of the claim;

(c)    Failing to promptly resolve the claim;

(d)    Failing to pay the full replacement cost required under the policy's relevant provisions;

(e)    Deliberately and wrongfully misstating the facts regarding payment of a previous claim;

(f)    Deliberately and wrongfully withholding payment and attempting to impose unauthorized conditions on payment.

29.    Nationwide is the employer of its adjusters, claims supervisors and other agents for the Plaintiff's claims handling and adjustment, and Nationwide is responsible and liable for the adjustment and handling of the Plaintiff's claim and the conduct of its adjusters and its employees in this matter pursuant to the principles of *respondeat superior*, vicarious liability, and other theories of agency.

30.    As a direct and proximate result of Nationwide's conduct, Plaintiff has suffered economic loss, deprivation of policy benefits, and significant emotional harm, including annoyance, inconvenience, and frustration.

## COUNT II – BAD FAITH / UNFAIR CLAIMS SETTLEMENT PRACTICES
(Common Law and W. Va. Code §33-11-4(9))

31.    Plaintiff repeats and re-alleges the above paragraphs as if fully set forth herein.

32.    Nationwide owed Plaintiff a duty of good faith and fair dealing in the adjustment of his first-party property claim.

33.    The West Virginia Unfair Trade Practices Act and West Virginia common law impose a duty on Nationwide and its employees to deal fairly and in good faith with the Plaintiff regarding his claim. This legal duty required, among other things, that Nationwide and its employees not engage in conduct prohibited by W.Va. Code §33-11-4(9) including but not limited to the following:

6

(a)    Failing to promptly investigate the claim;

(b)    Failing to act reasonably promptly upon communications with respect to the claim;

(c)    Failing to adopt and implement reasonable standards for the prompt investigation of the claim;

(d)    Refusing to pay the claim without conducting a reasonable investigation based upon all available information;

(e)    Not attempting in good faith to effectuate prompt, fair and equitable settlements of the claim;

(f)    Denying coverage without a reasonable basis;

(g)    Deliberately and knowingly, misrepresenting pertinent facts to Plaintiff and to the Office of the WV Insurance Commissioner;

(h)    Attempting to coerce a release as a condition to pay undisputed benefits;

(i)    Delaying resolution of the claim unreasonably and in bad faith; and

(j)    Other deceptive practices described above.

34.    The Defendant Nationwide, by and through its employees and agents, by their conduct as summarized above, and as will be further developed in discovery, engaged in bad faith, breached contractual duties owed to the Plaintiff, and violated the West Virginia Unfair Trade Practices Act, as well as various rules, regulations and laws of the State of West Virginia pertaining to the proper handling in the adjustment of insurance claims.

35.    On information and belief, said conduct by Nationwide, by and through its employees and agents, was carried out in an effort to frustrate, harass, and cause inconvenience, aggravation and harm to the Plaintiff. Such conduct by Nationwide did in fact cause the Plaintiff frustration, aggravation, inconvenience, harassment, and harm, and it is believed that the Defendant has

engaged in similar conduct and caused frustration, aggravation, inconvenience, harassment, and harm to other claimants, thus helping Nationwide to avoid payment of valid claims.

36.    At all times relevant herein, Nationwide, through its employees and agents, had a legal duty to deal fairly and in good faith with the Plaintiff regarding his August 7, 2023 roof claim. However, Nationwide, by its conduct and the conduct of its employees, agents, and claims representatives, breached its legal duties to deal fairly and in good faith with the Plaintiff by the above conduct.

37.    One of the purposes of Nationwide's conduct by and through its employees and agents was to delay action on valid claims and to avoid payment of amounts due and owed to the claimants under Nationwide policies. The Defendant knew, or reasonably should have known, that such conduct would create economic and emotional hardship for the Plaintiff in this claim.

38.    In addition to pleading causes of action against Nationwide for violating W.Va. Code §33-11-4(9), and other applicable statutory, regulatory and common law authorities pertaining to "bad faith" and unfair claims settlement practices, the Plaintiff also hereby pleads the following cause of action recognized by § 870 of the Restatement (Second) of Torts and by West Virginia Courts as follows:

> Liability for intended consequences – general principle:
>
> One who intentionally causes injury to another is subject to liability to the other for that injury if his conduct is generally culpable and not justifiable under the circumstances. This liability may be imposed although the actor's conduct does not come within a traditional category of tort liability. *See Harless v. First Nat. Bank*, 289 S.E.2d 692 (W.Va. 1982)

39.    The conduct of Nationwide has been of such intentional, malicious, reckless and/or willful nature, or with a conscious, reckless and outrageous indifference of the health, safety and welfare

of others, so as to permit the imposition of exemplary or punitive damages in this case in a fair and just amount as determined by the jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Joseph Donham demands judgment against the Defendant Nationwide for all compensatory and general damages related to his insurance and contractual claim, both economic and noneconomic, annoyance and inconvenience, emotional distress and mental anguish caused by its conduct, punitive damages, pre- and post- judgment interest, and his costs and attorney's fees pursuant to West Virginia law.

**THE PLAINTIFF DEMANDS A TRIAL BY JURY.**

Respectfully submitted,

Joseph Donham, Plaintiff
By Counsel,

Andrew G. Meek, WV Bar ID #10649
HAMSTEAD, WILLIAMS & MEEK PLLC
68 Clay Street, Suite C
Morgantown, WV 26501
T: 304-296-3636
F: 304-291-5364
Andrew@wvalaw.com
*Counsel for Plaintiff*

9